JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOHN MCKEOWN, <br><br> Plaintiff, <br><br> v. <br><br> FORD MOTOR COMPANY, TUTTLE CLICKS CAPISTRANO FORD, INC., and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: CV 19-00281-CJC(PLAx) <br><br><br> ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. 11] AND DENYING AS MOOT DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [Dkt. 12] |

**I. INTRODUCTION**

Plaintiff John McKeown brings this action against Defendants Ford Motor Company ("Ford") and Tuttle Clicks Capistrano Ford ("Capistrano Ford"), asserting a variety of claims related to an allegedly defective engine installed in his 2003 Ford F-350 Super Duty truck and Defendants' alleged failure to repair the defect. (Dkt. 1-1

[Complaint, hereinafter "Compl."].)  Before the Court is Plaintiff's motion to remand to Los Angeles County Superior Court and Defendant Ford's motion for judgment on the pleadings.  (Dkts. 11, 12.)  For the following reasons, Plaintiff's motion to remand is **GRANTED** and Defendant's motion for judgment on the pleadings is **DENIED AS MOOT**.[1]

**II. BACKGROUND**

On March 3, 2003, Plaintiff purchased a new Ford F-350 Super Duty truck ("the Vehicle") at a Ford dealership in Los Angeles, California.  (Compl. ¶ 9.)  The truck was equipped with a 6.0-liter Powerstroke Diesel Engine.  (*Id.* ¶ 10.)  Plaintiff alleges that there were serious defects in Ford's 6.0-liter diesel engine, that Ford was aware of these defects when it developed the engine, and that Ford made a number of misrepresentations with respect to the quality of this engine.  (*Id.* ¶¶ 16–34.)  Plaintiff allegedly relied on some of these misrepresentations in making his purchase.  (*Id.* ¶¶ 48–56.)

After purchasing the Vehicle, Plaintiff began experiencing problems with the Vehicle's engine.  (*Id.* ¶ 57.)  The engine allegedly runs rough and smokes when starting up, has an erratic idle, loses power, overheats, and blows white smoke, among other problems.  (*Id.*)  These problems have caused the Vehicle to lose power or shut off while driving.  (*Id.* ¶ 58.)  To fix these problems, Plaintiff has taken the Vehicle to Ford's authorized repair facilities on several occasions.  (*Id.* ¶ 59.)  However, the engine's problems have persisted.  (*Id.* ¶ 61.)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for March 18, 2019, at 1:30 p.m. is hereby vacated and off calendar.

On December 7, 2018, Plaintiff filed this action in Los Angeles County Superior Court. Plaintiff asserts causes of action against Ford for (1) intentional misrepresentation with respect to the sales contract, (2) negligent misrepresentation, (3) concealment, (4) intentional misrepresentation with respect to performance of the warranty contract, (5) violation of the Song-Beverly Consumer Warranty Act, and (6) violation of the Consumers Legal Remedies Act. (Compl. ¶¶ 88–255.) Plaintiff asserts a cause of action against Capistrano Ford for (7) negligent repair. (*Id.* ¶¶ 256–60.) On January 14, 2019, Ford removed this case to federal court. (Dkt. 1.) Now before the Court are Plaintiff's motion to remand and Ford's motion for judgment on the pleadings. (Dkts. 11, 12.)

### III. MOTION TO REMAND

A civil action brought in state court, but over which a federal court may exercise original jurisdiction, may be removed by the defendant to a federal district court. 28 U.S.C. § 1441(a). The burden of establishing subject matter jurisdiction falls on the defendant, and the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). If at any time before final judgment, the court determines that it is without subject matter jurisdiction, the action shall be remanded to state court. 28 U.S.C. § 1447(c). Federal district courts have diversity jurisdiction over suits for more than $75,000 where the citizenship of each plaintiff is different from that of each defendant. 28 U.S.C. § 1332(a).

The parties dispute whether there is diversity of citizenship. Plaintiff is a California resident. (Compl. ¶ 3.) Defendant Ford is a Delaware corporation with its principal place of business in Michigan. (Dkt. 1 [Notice of Removal] ¶ 22.) Defendant Capistrano Ford is a citizen of California. (*Id.* ¶ 23.) However, Defendants assert that the Court should not consider Capistrano Ford's citizenship because it was fraudulently

joined. (*Id.*) Plaintiff disagrees, contending the Court must remand this action and award attorneys' fees for the costs of removal.

### A. Fraudulent Joinder

Although diversity jurisdiction requires complete diversity of citizenship, there is an exception to the diversity requirement "where a non-diverse defendant has been 'fraudulently joined.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (internal citation omitted). Here, Defendants assert fraudulent joinder under the second way. Under this prong, "[j]oinder is fraudulent 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Hunter*, 582 F.3d at 1043 (alterations omitted) (quoting *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)). Conversely, "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Id.* at 1044 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003)).

Defendants have not carried their burden of showing that Plaintiffs obviously fail to state a cause of action against Capistrano Ford. Plaintiffs bring a cause of action against Capistrano Ford for negligent repair. The elements of negligence are duty, breach, causation, and damages. *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992). "One who undertakes repairs has a duty arising in tort to do them without negligence." *Sw. Forest Indus., Inc. v. Westinghouse Elec. Corp.*, 422 F.2d 1013, 1020

(9th Cir. 1970).  In support of their negligent repair claim, Plaintiff alleges that he took his Vehicle to Capistrano Ford for repair on numerous occasions.  (Compl. ¶ 257.)  He further alleges that Capistrano Ford owed him a duty to use ordinary care and skill in the storage, preparation, and repair of his Vehicle and that Capistrano Ford breached this duty by failing to properly store, prepare, and repair the Vehicle.  (*Id.* ¶¶ 258–59.)  Plaintiff alleges this breach was a proximate cause of his damages.  (*Id.* ¶ 260.)  Defendants argue that Plaintiff fails to support these allegations with adequate facts, but Defendants have failed to show that there is *no* possibility that Plaintiff could state a claim for negligent repair against Capistrano Ford.

Defendants argue that the economic loss rule bars Plaintiff's negligent repair claim against Capistrano Ford.  The economic loss rule arises out of "[t]he distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss."  *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965).  In other words, while a manufacturer may be appropriately held liable for physical injuries, regardless of the terms of any warranty, the manufacturer cannot be held liable "for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands."  *Id.* at 18–19.  Accordingly, a plaintiff may recover in tort "when a product defect causes damage to 'other property,' that is, property *other than the product itself*," whereas "[t]he law of contractual warranty governs damage to the product itself."  *Jimenez v. Superior Court*, 29 Cal. 4th 473, 483 (2002).

To apply the economic loss rule, courts first determine what is the product at issue.  *Id.*  "Only then do [courts] find out whether the injury is to the product itself (for which recovery is barred by the economic loss rule) or to property other than the defective product (for which plaintiffs may recover in tort)."  *Id.*  Notably, "the economic loss rule does not necessarily bar recovery in tort for damage that a defective product (e.g., a

window) causes to other portions of a larger product (e.g., a house) into which the former has been incorporated." *Id.*; *see, e.g., Stearmen v. Centex Homes*, 78 Cal. App. 4th 611, 615 (2000) (affirming judgment making a builder strictly liable in tort for damages that a defective foundation caused to the interior and exterior of a home).

Defendants have failed to show the economic loss rule entirely precludes Plaintiff's negligent repair claim. Plaintiff alleges problems with various subcomponents of the engine, including the turbocharger systems, fuel injection systems, head gasket, EGR valves, electrical systems, transmission systems, and cooling systems. The economic loss rule would not bar recovery in tort for damage that these subcomponents cause to the engine as a whole or for damage that the engine caused to the Vehicle in which it has been incorporated. *Cf. Jimenez*, 29 Cal. 4th at 484 (finding the manufacturer of a defective window may be liable in tort for damage that the window's defect causes to other parts of the home, but expressing no opinion as to "whether there may be situations in which the economic loss rule would bar recovery for damages that a defective component part causes to other portions of the finished product of which it is a part"); *see also Sabicer v. Ford Motor Co.*, --- F.3d ----, 2019 WL 1012303, at *2 (C.D. Cal. Mar. 1, 2019) (finding the economic loss rule did not bar recovery in tort for damage that subcomponents cause to the rest of the engine or the vehicle as a whole).

In addition, several courts have held that the economic loss rule does not apply to cases involving negligent performance of services. *See N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 777–81 (1997) (holding the economic loss rule does not apply in cases involving the negligent performance of services that results in foreseeable economic loss). In *J'Aire*, the California Supreme Court held that a plaintiff could recover in tort for loss of expected economic advantage—without accompanying personal injury or property damage—from a defendant's negligent performance of a contract if there was a "special relationship" between the parties. *J'Aire Corp. v. Gregory*, 24 Cal.

3d 799, 805 (1979). Although the parties in *J'Aire* were not in contractual privity, other courts have extended *J'Aire* to cases where the parties were in contractual privity. *See, e.g.*, *N. Am. Chem.*, 59 Cal. App. 4th at 783; *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1448 (1995); *Pisano v. Am. Leasing*, 146 Cal. App. 3d 194, 197 (1983). To determine whether there is a "special relationship," courts consider: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. *J'Aire*, 24 Cal. 3d at 804. The crucial factor is whether the economic harm to the plaintiff from the defendant's negligent conduct is foreseeable. *J'Aire*, 23 Cal. 3d at 805–06; *N. Am. Chem.*, 59 Cal. App. 4th at 784. In cases involving the negligent performance of services, economic harm is typically foreseeable. *See id.* at 784–85. Here, it is conceivable that there was a special relationship between Plaintiff and Capistrano Ford when Plaintiff brought in his Vehicle for repair. Defendants have failed to prove that a customer could not possibly recover against a dealership for negligent repair. *See Lytle v. Ford Motor Co.*, 2018 WL 4793800, at *2 (E.D. Cal. Oct. 2, 2018) ("California law is not so settled that a plaintiff could not possibly recover against a dealership for negligent repair of a vehicle."); *see also Tasch v. Ford Motor Co.*, 2018 WL 3956493, at *1 (C.D. Cal. Aug. 16, 2018) (finding defendants did not show plaintiff's negligent repair claim was impossible as a matter of California law); *Forward-Rossi v. Jaguar Land Rover N. Am., LLC*, 2016 WL 3396925, at *4 (C.D. Cal. June 13, 2016) (same).

To support their argument that the economic loss rule bars Plaintiff's negligent repair claim, Defendants attach the MDL court's decision in *In re Ford Motors Co. DPS6 Powershift Transmission Products Liability Litigation*. (*See* Dkt. 14-3 Ex. A [No. 18-ML-02814 AB (FFMx) (C.D. Cal. Sept. 10, 2018)].) In that case, the court found that the economic loss rule barred the plaintiffs' claims for negligent repair where the plaintiffs

did "not point[] to any allegations establishing that the Dealer's allegedly negligent repair of their vehicles injured them or their property, such as by causing an accident in which they were injured or their vehicles damaged." (*Id.* at 12.) The court did not, however, examine how the California Supreme Court's decision in *Jimenez* applies to defects in one component of a vehicle. Here, there are also allegations suggesting defects in a particular component (the engine) caused damage to the rest of the vehicle (i.e., inability to make right turns). (*See* Compl. ¶ 58.) In addition, the plaintiffs in the MDL case did not explain how any exception to the economic loss rule applied to their claims. In contrast, Plaintiff has identified a relevant exception: the economic loss rule does not apply in cases involving the negligent performance of services that results in foreseeable economic loss.

Defendants also argue that Plaintiff will not be able to show any causation on his negligent repair claim because he alleges elsewhere that the defects in the diesel engine were irreparable. (*See, e.g*, *id.* ¶ 205.) According to Defendants, if the defects were irreparable, Plaintiff will be unable to establish a causal connection between Capistrano Ford's repairs and the alleged harm. But possibly inconsistent allegations fail to establish that Plaintiff could never allege causation, as the Federal Rules of Civil Procedure allow Plaintiff to plead in the alternative. *See* Fed. R. Civ. P. 8(a)(3). In addition, Plaintiff contends that Capistrano Ford was negligent by making "Band-Aid" repairs that failed to fully remediate the issues and that these repairs caused additional damage on top of the damage attributable to the underlying defect. An underlying "irreparable" problem does not necessarily foreclose Capistrano Ford's own negligence in attempting to repair that problem.

Alternatively, Defendants ask this Court to exercise its discretion under Federal Rule of Civil Procedure 21 to dismiss Capistrano Ford as a party. Dismissal of dispensable nondiverse parties should be exercised sparingly after considering whether

such dismissal will prejudice any of the parties in the litigation. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). The Court declines to do so here. The claims of both Ford and Capistrano Ford are sufficiently intertwined, factually and legally, that severance would be inconvenient and inefficient. As Capistrano Ford performed many of the repairs of the Vehicle, it would be far more convenient for Plaintiff to present any claims related to those repairs in the same case.

In light of the presumption against removal jurisdiction, *see Gaus*, 980 F.2d at 566, Defendants have failed to show that joinder of Capistrano Ford was fraudulent. Because the fraudulent joinder exception to the diversity requirement does not apply, the parties in this action are not completely diverse and this Court lacks subject matter jurisdiction. The action was improperly removed and must be remanded to Los Angeles County Superior Court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.")

**B.     Attorneys' Fees**

Plaintiff also seeks reasonable costs and attorneys' fees associated with the case's removal to federal court. A court may, at its discretion, award reasonable costs and attorneys' fees incurred as a result of removal. 28 U.S.C. § 1447(c). "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). The Court declines to exercise its discretion to award attorneys' fees. Here, unsettled case law on the application of the economic loss rule provided an objectively reasonable basis for Defendants to believe that the economic loss rule barred Plaintiff's negligent repair claim and that Capistrano Ford was fraudulently joined.

//

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is **GRANTED**. Since the Court lacks jurisdiction over this action, Defendant's motion for judgment on the pleadings is **DENIED AS MOOT**.

DATED: March 13, 2019

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE